UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────────

GERALDINE R.,[1]

                              Plaintiff,

                                                                                                       Case # 19-CV-511-FPG

v.

                                                                                                         DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
───────────────────────────────────

## INTRODUCTION

Plaintiff Geraldine R. brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied her application for disability insurance benefits ("DIB") under Title II of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. § 405(g). Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 13, 17. For the reasons that follow, the Commissioner's motion is GRANTED, and Plaintiff's motion is DENIED.

## BACKGROUND

In December 2015, Plaintiff applied for DIB under Title II of the Act with the Social Security Administration (the "SSA"). Tr.[2] 10, 61. She alleged disability beginning on October 25, 2015 due to a "[l]arge thoracic herniated disc with calcification," a "[s]lipped disc in lumbar," and a "[f]acet joint cyst in lumbar." *Id.* On November 30, 2017, Plaintiff and a vocational expert (the "VE") appeared and testified at a hearing before Administrative Law Judge Paul Greenberg (the "ALJ"). Tr. 10, 18. On April 30, 2018, the ALJ issued a decision finding that Plaintiff was not

---

[1] Under this District's Standing Order, any non-government party must be referenced solely by first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF No. 7.

1

disabled. Tr. 10–18. On March 25, 2019, the Appeals Council denied Plaintiff's request for review. Tr. 1–3. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks omitted). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted). It is not the Court's "function to determine *de novo* whether plaintiff is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotation marks and brackets omitted).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470–71 (1986); 20 C.F.R. § 404.1520(a). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(a)(4)(ii), (c). If the claimant does not have a severe

impairment or combination of impairments, the analysis concludes with a finding of "not disabled." *Id.* If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(a)(4)(iii). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id.* If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations caused by his or her collective impairments. *See id.* § 404.1520(a)(4)(iv), (e)–(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits claimant to perform the requirements of his or her past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(a)(4)(v), (g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (internal quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.   The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits using the process described above. At step one, the ALJ found that Plaintiff had not engaged in any substantial gainful activity from October 25, 2015 through the date of the ALJ's decision. Tr. 12. At step two, the ALJ found that Plaintiff

had two severe impairments: degenerative disc disease and obesity. *Id.* At step three, the ALJ found that these impairments did not meet or medically equal any Listings impairment. *Id.*

Next, the ALJ determined that Plaintiff had the RFC to perform sedentary work with certain limitations. Tr. 13. Specifically, the ALJ found that Plaintiff could occasionally kneel, crouch, crawl, and climb ramps and stairs. *Id.* The ALJ also concluded that Plaintiff could not: climb ladders, ropes, or scaffolds; work around unprotected heights or moving mechanical parts; or operate motorized equipment as part of her job. *Id.* The ALJ further noted that Plaintiff must be able to stand for five minutes after sitting for thirty minutes but may continue working in either position. *Id.* At step four, the ALJ found that Plaintiff was capable of performing her past relevant work as a collection clerk, information clerk, and hotel night auditor. Tr. 17. The ALJ therefore concluded that Plaintiff had not been disabled from October 25, 2015 through the date of the decision. *Id.*

## II.     Analysis

Plaintiff argues that the ALJ erred in evaluating her credibility and in making an RFC determination that was unsupported by substantial evidence. ECF No. 13-1 at 9–15. The Court disagrees.

### A.     *Credibility Evaluation*

"The ALJ has the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Jackson v. Astrue*, No. 05-CV-1061, 2009 WL 3764221, at *7 (N.D.N.Y. Nov. 10, 2009) (internal quotation marks omitted) (citing *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979)). "Because the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, his decision to discredit subjective testimony is entitled

to deference and may not be disturbed on review if his disability determination is supported by substantial evidence." *Baker ex rel. Baker v. Berryhill*, No. 15-CV-943, 2018 WL 1173782, at *5 (W.D.N.Y. Mar. 6, 2018) (internal quotation marks omitted).

Plaintiff argues generally that the ALJ failed to adequately explain his decision to discount her credibility. ECF No. 13-1 at 9–14. Plaintiff does not cite specific testimony that she claims the ALJ erred in rejecting. *Id.* She relies on *Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 434–38 (S.D.N.Y. 2010). In that case, the court found that the ALJ failed to adequately explain his decision to reject the claimant's testimony because the ALJ mischaracterized the record. *Id.* Plaintiff also relies on *Canzoneri v. Berryhill*, a case in which the ALJ failed to discuss any reasons for discounting the claimant's statements regarding her limitations and the ALJ's RFC assessment was inconsistent with the claimant's testimony. No. 17-CV-808, slip op. at 4–5 (W.D.N.Y. May 29, 2019).

Here, Plaintiff has not cited any mischaracterizations of the record or inconsistencies between the ALJ's RFC assessment and Plaintiff's testimony. In fact, the ALJ appears to have accurately recited the record, and his RFC assessment appears to be consistent with Plaintiff's testimony. Plaintiff testified that she had to leave her last job due to the number of her medical tests and numbness in her leg,[3] but she also testified that the numbness improved following back surgery. Tr. 44. She further testified that she can stand for maybe ten minutes at a time and sit for between a half-hour and an hour before needing to stand or walk around for a short period of time due to discomfort in her back and the numbness in her leg. Tr. 37, 52–53. She testified that her

---

[3] This testimony is not consistent with the record. Plaintiff previously represented to the SSA that she planned to stop working to babysit her grandson. Tr. 158. And although she claimed her symptoms prevented her from doing so initially, *id.*, it appears she was able to do so, at least on occasion, after her back surgery. Tr. 419.

medications alleviate some of her discomfort. Tr. 52. Plaintiff further stated she loses her balance occasionally, which causes her to limit how often she goes up and down the stairs in her home. Tr. 35–36, 50–51. She testified that the most she can lift is a gallon of milk. Tr. 54.

The ALJ's analysis regarding Plaintiff's credibility is far from a bastion of clarity, but to the extent the ALJ "rejected" *any* of Plaintiff's testimony, the lack of clarity would be harmless error. *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) ("Where application of the correct legal principles to the record could lead only to the same conclusion, there is no need to require agency reconsideration." (internal quotation marks and brackets omitted)); *Polynice v. Colvin*, No. 12-CV-1381, 2013 WL 6086650, at *13–14 (N.D.N.Y. Nov. 19, 2013) (finding harmless error with respect to ALJ's credibility analysis where ALJ's RFC determination was largely consistent with claimant's testimony). The ALJ accounted for all of the limitations claimed by Plaintiff, including her leg numbness and back pain, which cause a need to stand after sitting for a half hour, Tr. 13 (requiring that she be able to stand for five minutes after sitting for thirty minutes), balance issues, *id.* (limiting her to no work around unprotected heights and only occasional use of ramps and stairs), and her inability to lift more than a gallon of milk, *id.* (limiting her to sedentary work[4]). Further, as discussed below, the medical record notes mild impairments and substantial improvement following Plaintiff's back surgery. *Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (holding that ALJ properly concluded that claimant's subjective complaints were not sufficient to establish disability where complaints were unsupported by objective medical evidence); *Estrella-Martinez v. Saul*, No. 19-CV-6606, 2020 WL 2042396, at *2 (W.D.N.Y. Apr. 28, 2020) (holding that ALJ's credibility assessment was not made in error where it was mostly

---

[4] 20 C.F.R. § 404.1567(a) ("Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.").

consistent with claimant's testimony and, to the extent the ALJ rejected a portion of the claimant's testimony, that testimony was not supported by the medical record).

Plaintiff also argues that the ALJ failed to account for her good work history in discounting her credibility. ECF No. 13-1 at 11–12. ALJs must "'consider all of the evidence presented, including information about [a claimant's] prior work record,'" but "work history is just one of many factors that the ALJ is instructed to consider in weighing the credibility of claimant testimony." *Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998) (quoting 20 C.F.R. § 416.929(c)(3)); 20 C.F.R. § 404.1529(c)(3). Here, there is no indication that the ALJ traversed this standard. The ALJ specifically noted that, prior to her onset date, Plaintiff "had a substantial history of employment in several different office-type settings." Tr. 14. The ALJ was not required to credit Plaintiff's good work history over her own testimony regarding the limitations caused by her impairments. *See Besseghini v. Colvin*, No. 15-CV-508, 2017 WL 6616380, at *3 (W.D.N.Y. Dec. 27, 2017) (holding that, even "ALJ's failure to explicitly reference [claimant]'s good work history . . . d[id] not undermine the credibility assessment[] given th[at] substantial evidence support[ed] the ALJ's determination").

Plaintiff further argues that the ALJ erred by drawing "a negative inference" regarding Plaintiff's credibility based on her election of care. ECF No. 13-1 at 12–13. As noted by the ALJ in reviewing Plaintiff's medical history, her treatment provider recommended that she see a Dr. Kowalski, but rather than pursuing care from Dr. Kowalski, Plaintiff sought care from the Cleveland Clinic. Tr. 16, 275–76, 352–55. Even assuming that Plaintiff is correct that it would be error for the ALJ to draw a negative inference from this fact, there is no indication that the ALJ drew any such negative inference. Tr. 16. To the contrary, at the hearing, the ALJ said he was glad

Plaintiff "got connected with the . . . Cleveland Clinic." Tr. 59. Plaintiff has not shown that remand is warranted based on the ALJ's evaluation of her credibility.

      B.      RFC Determination

A claimant's RFC reflects what she "can still do despite . . . her limitations." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (internal quotation marks omitted). Generally, the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order). As discussed above, the ALJ's RFC determination here was supported by Plaintiff's testimony. It was further supported by the medical record.

Plaintiff specifically challenges the ALJ's RFC determination in that it fails to account for time she would spend off task due to continuing pain. ECF No. 13-1 at 14. Plaintiff cites a report of her physical therapist that she has "endurance problems." *Id.* at 15.[5] Plaintiff cites no authority supporting her position that the ALJ was required to adopt an off-task-time limitation based on this evidence. *Id.* at 13–15. As discussed above, Plaintiff did not testify to needing to spend such time off task due to her pain.

In any event, the medical record does not support such a limitation. Even prior to her surgery, examinations of Plaintiff often revealed relatively normal results, including strength in her lower extremities and a steady or relatively normal gait. Tr. 212–13, 244, 248, 288–91, 311, 332, 393, 396; *see also* Tr. 255–58 (noting strength within functional limits but need for a rolling walker to ambulate and an antalgic gait on her left), 354, 357 (noting no apparent distress and no

---

[5] Plaintiff also claims she testified that it takes her two and a half hours to get ready in the morning. ECF No. 13-1 at 15. The transcript indicates that it takes Plaintiff "[t]wo and a half-hour, 45 minutes" to get ready in the morning. Tr. 53. It appears this may be a typographical error, but to the extent Plaintiff testified that she takes between two and a half hours and two hours and forty-five minutes to get ready in the morning, the ALJ was justified in rejecting the severity of that limitation as inconsistent with the remainder of Plaintiff's testimony and the record. *See Estrella-Martinez*, 2020 WL 2042396, at *2.

pain on palpation but an ataxic gait), 276, 284–85 (noting Plaintiff was not in acute distress and ambulates without significant difficulty, although noting occasional difficulty ambulating in the past). In November 2015, Plaintiff's treating physician noted that she was coping well with her symptoms and had good strength. Tr. 285.

Rather than pain, most medical records prior to her surgery relate to complaints of left leg numbness and bladder disfunction, Tr. 232–33, 268, 292, 294–95, 318, 331. Although she reported back pain on occasion, Tr. 246, 273, 275–76, 298, 300–01, 321, 327, 395, (often noting pain is intermittent or 4/10), she frequently did not complain of back pain in examinations or described her pain as minimal. Tr. 232–33, 240, 243, 288, 290, 294, 331. Beyond her pain and numbness, some medical records also indicate abnormal ambulation, Tr. 275–76, 295, 352–54, 356–57, but as the ALJ discusses, there are medical records that reflect improvement following Plaintiff's back surgery. Tr. 359 (encouraging Plaintiff to increase activities as tolerated and noting that she was doing well six weeks after the surgery, that her balance and leg pain/weakness had improved, that she had "5/5 strength throughout," and she was ambulating at home independently, but noting continued numbness in left leg), 361 (noting similar findings six months after the surgery, except she was now ambulating without assistance at home and with a cane in public, she had a normal gait, and rating her pain as a two), 402–03 (noting "not much pain" following surgery and no current discomfort). Generally, exams after her back surgery reported a normal gait and normal findings. Tr. 407, 411, 415–16, 419–20, 492.

Some medical records do note continued limitations of movement, some pain, some stiffness, and balance issues, Tr. 406–08 (noting difficulty reaching, bending, and lifting and "some limitations of movement" but ambulatory with cane), 415 (noting some pain with movement), 491 (noting balance issues but ambulatory with a cane). She attended physical therapy

9

following her back surgery and noted occasional balance issues, stiffness, and some back pain, which she reported to be 4/10, but 0/10 at rest. Tr. 455–90. As Plaintiff points out, these records attribute her balance issues to poor core strength and "endurance." *Id.* The ALJ, however, accounted for Plaintiff's balance issues in his RFC assessment. Further, Plaintiff reported improvements over the course of physical therapy, and eventually reported that her balance issues were infrequent (not even daily), that she was just using her cane for only precautionary reasons outside the house, and that she only experienced intermittent mid back pain if she did not get enough rest. Tr. 459, 485–86.

There is nothing in the record indicating that Plaintiff would be off task for any period of time due to her intermittent pain. The ALJ "is entitled to rely not only on what the record says, but also on what it does not say." *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983); *see also Cichocki v. Astrue*, 729 F.3d 172, 177–78 (2d Cir. 2013) (holding that ALJ need not address "all possible limitations" but instead need only address "relevant limitations" supported by the record). It is generally "Plaintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ." *Beaman v. Comm'r of Soc. Sec.*, No. 18-CV-1344, 2020 WL 473618, at *6 (W.D.N.Y. Jan. 28, 2020). Plaintiff has not satisfied that burden and remand is unwarranted.

**CONCLUSION**

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings, ECF No. 17, is GRANTED, and Plaintiff's Motion for Judgment on the Pleadings, ECF No. 13, is DENIED. The complaint is DISMISSED WITH PREJUDICE, and the Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: March 30, 2021
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court